United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Ralph Lee, and others, Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 18-21876-Civ-Scola |
| Branch Banking & Trust Company, Defendant. | ) |
| | ) |

**Order Granting in Part and Denying
in Part the Defendant's Motion to Dismiss**

The Plaintiffs assert one claim under the Telephone Consumer Protection Act (the "TCPA," 47 U.S.C. § 227) on behalf of themselves and a nationwide class for damages and injunctive relief arising from allegedly improper telephone marketing calls made by Defendant Branch Banking & Trust ("BB&T"). Now before the Court is a motion to dismiss filed by BB&T. (the "Motion," ECF No. 15.) Having considered the parties' submissions and the relevant law, the Court **grants in part and denies in part** the Motion, as further described below.

1. **Background**

The following is a summary the factual allegations contained in the Amended Complaint, (ECF No. 5), which the Court accepts as true for the purposes of the Motion. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

BB&T is a large, national bank, incorporated in North Carolina with 2,100 branches throughout the United States. (ECF No. 5 at ¶¶ 10, 28.) North Carolina is also the location of BB&T's principal place of business. (*Id.* at ¶ 10.) Around 2015, BB&T contracted with certain call centers to telephonically recruit new and former customers to the bank. (*Id.* at ¶ 1.)

The four named plaintiffs ("Plaintiffs") each allege that they registered their phone number with the National Do Not Call Registry, but nonetheless received multiple calls from BB&T to solicit their business without their consent. (*Id.* at ¶¶ 31, 33, 36, 39, 41, 45, 47, 49, 53, 55, 57, 61.) Specifically, Plaintiff Ralph Lee ("Lee"), a citizen of Maryland and former customer of BB&T, alleges he received over fifty calls from the campaign. (*Id.* at ¶¶ 6, 34.) Plaintiff Jeorge Irizarry ("Irizarry") is a citizen of Florida who claims that BB&T placed three calls per week to his phone in December 2015. (*Id.* at ¶¶ 7, 42.) Similarly,

Plaintiff Sharon Montmimy ("Montmimy"), who is a citizen of Massachusetts, was never a customer of BB&T and claims she received over 100 calls from the bank in 2016. (*Id.* at ¶¶ 8, 50.) And finally, Ben Newman ("Newman"), a citizen of California, alleges that BB&T called his phone over 50-times in the fall of 2015. (*Id.* at ¶¶ 9, 58.)

On those core allegations, the Plaintiffs assert one claim for violations of the TCPA, seeking injunctive relief and damages on behalf of themselves and a nationwide class of others similarly situated. (*Id.* at ¶¶ 76, 96-104.) BB&T responds and moves to dismiss the Complaint, arguing the Court lacks personal jurisdiction over BB&T and the Complaint fails to state a claim. (ECF No. 15.)

## 2. BB&T is Subject to Personal Jurisdiction in Florida

BB&T requests the Court to dismiss the case in its entirety for lack of personal jurisdiction. Specifically, the Motion argues that BB&T is not subject to general jurisdiction in Florida; that Lee, Montmimy and Newman plead no facts to support the Court exercising specific jurisdiction over their claims against BB&T; that affidavit evidence submitted with the Motion establishes that specific jurisdiction over Irizarry's claim is improper; and that personal jurisdiction does not exist over the claims of putative class members who are not residents of Florida. (*Id.*)

### A. Standard of Review – Rule 12(b)(2)

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir.2009). A defendant challenging personal jurisdiction must present evidence to counter the plaintiff's allegations. *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir.2009). If the defendant presents sufficient evidence, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Id.*

"When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process," federal courts must "look to the state long-arm statute in order to determine the existence of personal jurisdiction." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996) (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855–56 (11th Cir. 1990)). If personal jurisdiction exists under the statute, the court must then "analyze this long-arm jurisdiction under the due process requirements of the federal constitution." *Id.* at 857.

The Eleventh Circuit has explained that defendants may be subject to personal jurisdiction under Florida's long-arm statute in two ways:

> First, a defendant is subject to *'specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida'—for conduct specifically enumerated in the statute[, Fla. Stat. § 48.193]. Second, a defendant is subject to *'general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity in Florida.'

*Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015); Fla. Stat. § 48.193). Florida's long-arm statute permits a court to exercise personal jurisdiction over a person who commits a tortious act within Florida. Fla. Stat. § 48.193(1)(a)(2) (2017). This long-arm jurisdiction even extends to defendants who committed their tortious acts outside the state if their acts "cause injury in Florida." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1216 (11th Cir.1999).

After ensuring personal jurisdiction under the forum state's long-arm statute, a court must next ensure that invoking personal jurisdiction would not violate the defendant's Due Process rights. The Eleventh Circuit uses a three-part due process test:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum;
>
> (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and
>
> (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Louis Vuitton*, 736 F.3d at 1355 (internal quotation marks omitted).

As to the first prong (arising out of or relatedness) a court should "focus on the direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56. As to the second prong (purposeful availment) a court may apply the traditional minimum-contacts test, or, in intentional-tort cases, may utilize the effects test. "Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state."

*Id.* at 1356 (citation omitted). "This occurs when the tort: (1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* (internal punctuation & citation omitted). As to the third prong (fair play and substantial justice) a court should "consider these factors: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Id.* at 1358 (quotation marks omitted).

### B. BB&T is Not Subject to General Jurisdiction in Florida

In the Amended Complaint, the Plaintiffs argue that BB&T is subject to general personal jurisdiction in Florida because of its "continuous and systematic contacts," including "telemarketing efforts," that target the state. (ECF No. 5 at ¶ 16); (ECF No. 18 at 13 n.42.) BB&T argues that the Plaintiffs fail to allege any facts to support that legal conclusion, and further that the Plaintiffs fail to make a prima facie showing that BB&T is "at home" in Florida or otherwise subject to general jurisdiction in the state. (ECF No. 15 at p. 9.) In response, the Plaintiff asserts that BB&T is registered to conduct business in Florida, maintains numerous branches and ATM locations throughout the state, files lawsuits in Florida courts, and maintains a registered agent to receive service of process in the state.

"Because Florida's long-arm provision 'extends to the limits on personal jurisdiction imposed by the Due Process Clause,'" the Court need only determine whether the exercise of general jurisdiction over BB&T would "exceed constitutional bounds." *Waite*, 901 F.3d at 1316 (quoting *Carmouche*, 789 F.3d at 1204). Recent Supreme Court precedent defines those "constitutional bounds." In *Goodyear Dunlop*, the Court held that "'[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporation' without offending due process 'when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.'" *Id.* at 1317 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "[E]ssentially at home" was further defined in *Daimler*, where the Supreme Court held that "only a limited set of affiliations with the forum" may support such a finding, including the two "paradigm bases for general jurisdiction" for corporations—the place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Most recently, the Supreme Court explained that corporations may only be subject to general jurisdiction in states outside of those "paradigm bases" in an "exceptional case." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). In deciding whether a case is "exceptional" under this analysis, courts

must consider whether "the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Waite*, 901 F.3d at 1318 (quoting *Carmouche*, 789 F.3d at 1205).

Under that framework, the Court cannot find that BB&T is subject to general jurisdiction in Florida. BB&T is a North Carolina corporation and maintains it principal place of business in that state. Thus, neither of the "paradigm bases" for asserting general jurisdiction exists. *Daimler*, 571 U.S. at 137.

Nor is this an "exceptional case." *Tyrrell*, 137 S. Ct. at 1558. On the record before it, the Court cannot conclude that BB&T is "essentially at home" in Florida. The Plaintiffs do not allege that BB&T's "leadership was based in Florida or that the company otherwise directed its operations from Florida." *Waite*, 901 F.3d at 1318. Rather, the Plaintiffs only argue that BB&T has been registered to conduct business in Florida since at least 2001 and that BB&T "conduct[s] significant business in Florida" through its numerous branches and ATM locations in the state. *Id.*; (ECF No. 18 at pp. 13-14.) Even if those contacts could fairly be considered "substantial, continuous, and systematic," they still would not render BB&T "at home" in Florida or otherwise support the exercise of general jurisdiction by this Court. *Waite*, 901 F.3d at 1318 (rejecting similar arguments) (quoting *Daimler*, 571 U.S. at 138)). Likewise, BB&T's maintenance of an agent in Florida to accept service of process does not subject it to general jurisdiction here. *Id.* ("Even before the Supreme Court's decision in *Daimler*, this Court held that a defendant's appointment of an agent for service of process in a state did not confer general jurisdiction over a defendant there."). Finally, filing lawsuits in Florida's courts is not "exceptional" or unique and does not "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Id.* (quoting *Carmouche*, 789 F.3d at 1205). Thus, exercising general jurisdiction over BB&T here would violate due process and the Court declines to do so.

### C. No Specific Jurisdiction Exists For Non-Florida Named-Plaintiffs

Finding general jurisdiction lacking, the Court now must determine whether to exercise specific jurisdiction over BB&T. In the Motion, BB&T argues that the Amended Complaint fails to make a prima facie showing of specific jurisdiction. (ECF No. 15 at pp. 9-10.) With respect to the claims of Lee, Montmimy and Newman, the Court agrees.

Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919. Put another way, "specific jurisdiction exists if a claim is related to or arises out of the non-resident defendant's contacts with the forum." *Molock v. Whole Foods Market, Inc.*, 297 F. Supp. 3d 114, 123 (D.D.C. 2018) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

To establish specific jurisdiction over a non-resident defendant, plaintiffs must first make a prima facie showing under Florida's Long-Arm statute, Fla. Stat. § 48.193(1)(a). *Carmouche*, 789 F.3d at 1204 (noting that "section 48.193(1)(a) lists acts that subject a defendant to *specific* personal jurisdiction" in Florida). In relevant part, that statute grants specific jurisdiction over parties "who personally or through an agent" do any of the following acts, provided those acts give rise to the cause of action at issue:

1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

2. Committing a tortious act within this state.

. . .

6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

    a. The defendant was engaged in solicitation or service activities within this state

Fla. Stat. § 48.193(1)(a).

The Amended Complaint contains no allegations connecting Lee, Montmimy or Newman's claims to Florida, a point the Plaintiffs do not dispute in their opposition. None of those Plaintiffs are Florida citizens and, based on the Amended Complaint's allegations, it would be unreasonable to infer that the allegedly offending calls to those Plaintiffs were made to or from Florida, or otherwise arose from BB&T's operations in the state. Thus, Lee, Montmimy and Newman fail to make a prima facie showing of specific jurisdiction under Florida's Long-Arm statute and their claims are **dismissed without prejudice.**[1]

---

[1] The Court is also bound to dismiss Lee, Montmimy and Newman's individual claims based under the due process considerations explained by the Supreme Court in *Bristol-Myers Squibb, Co v. Superior Court of California, San*

But the Court disagrees with BB&T that it is not subject to specific jurisdiction in Florida for Irizarry's claim. (ECF No. 15 at pp. 10-11.) The Amended Complaint alleges that Irizarry is a citizen of Florida, (ECF No. 5 at ¶ 7), and received phone calls from Defendant or its agents in December 2015, (*Id.* at ¶¶ 11, 12, 40, 41). In its opposition brief, the Plaintiffs assert that "Irizarry received the telephone calls in Florida," meaning "the injury occurred in Florida." (ECF No. 18 at p. 17.) Drawing all reasonable inferences in favor of Irizarry, *see Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1275 (11th Cir. 2002), the Court finds that he makes a prima facie showing of specific jurisdiction under Florida's Long-Arm statute. Fla. Stat. § 48.193(1)(a)(2), (6)(a).

To counter this showing, BB&T submits affidavits of itself and third-party Convergys Corporation ("Convergys"), a telemarketing agency employed by BB&T. (ECF Nos. 15-1, 15-2.) The thrust of this evidence is that BB&T employs Convergys to telemarket its services, (ECF No. 15-2 at ¶ 4); that BB&T has no record of Irizarry, his phone number, or calling him directly or through an agent, (ECF No. 15-1 at ¶¶ 11, 12, 14, 17); and that Convergys has no record of receiving Irizarry's number from BB&T, or calling his phone in 2015 or 2016. (ECF No. 15-2 at ¶¶ 17, 19.) That BB&T and Convergys attest to having no record of calling Irizarry during the relevant time frame does not rebut that another agent of BB&T may have done so. (*See* ECF No. 5 at ¶¶ 11, 12 (not limiting allegations of agency to Convergys).) Thus, the Court finds that Irizarry has satisfied Florida's Long-Arm statute, and **denies** BB&T's requested evidentiary hearing. (ECF No. 15 at 17.)

The Court also finds that exercising specific jurisdiction over BB&T for Irizarry's claim comports with due process. First, that claim "arise[s] out of"

---

*Francisco Cty.* 137 S. Ct. 1773, 1781 (2017) ("The mere fact that *other* plaintiffs . . . allegedly sustained the same injuries as did the nonresidents[ ]does not allow the State to assert specific jurisdiction over the nonresidents' claims. As we have explained, 'a defendant's relationship to a third party, standing alone, is an insufficient basis for jurisdiction.' This remains true even when third parties . . . can bring claims similar to those brought by the nonresidents. . . . What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.") (citation and alterations omitted).

But, as explained below, (*see* section 2.D., *infra*), dismissal of those individual claims does not preclude Lee, Montmimy and Newman from recovering as class members, if a class is certified and if those Plaintiffs qualify as members. *See Molock*, 297 F. Supp. 3d at 124-27 (dismissing non-resident named-Plaintiffs' claims against non-resident defendant under *Bristol-Myers Squibb, Co.* for lack of specific jurisdiction, while simultaneously holding that that precedent did not bar the claims of non-resident putative class members).

BB&T's "contacts with the forum"—namely, its phone calls to Irizarry in Florida. *Louis Vuitton*, 736 F.3d at 1355.

Second, under the "effects test" enunciated in *Calder*, BB&T "purposefully availed" itself "of the privilege of conducting activities within" Florida. *Id.* at 1356-57; *Calder v. Jones*, 465 U.S. 783 (1984); *Bagg v. Ushealth Grp., Inc.*, No. 6:15-cv-1666-Orl-37GJK, 2016 WL 1588666, *4-*5 (M.D. Fla. Apr. 20, 2016) (applying "effects test" in TCPA case). That test is satisfied where the tort (1) was intentional, (2) was aimed at the forum state, and (3) caused harm that a defendant should have anticipated would be caused in the forum state. *Louis Vuitton*, 736 F.3d at 1356. Here, the Amended Complaint alleges that Irizarry is a citizen of Florida, (ECF No. 5 at ¶ 7); that BB&T repeatedly called Irizarry to solicit his business against his wishes and in violation of the TCPA, (*id.* at ¶¶ 42, 43); and that BB&T conducts significant business in and solicited customers, like Irizarry, from the Southern District of Florida, (*id.* at ¶¶ 14-16). These allegations support an inference that BB&T purposefully called a Florida resident against his wishes to solicit his business in violation of the TCPA. In light of that, the Court finds that BB&T should have "reasonably anticipated that [it] might be sued [in Florida] in connection with those activities." *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008).

Finally, the Court must consider whether BB&T has made a "'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355 (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)). BB&T makes no argument to this end, and the Court will not argue for it. As a result, the Court finds that exercising specific jurisdiction over BB&T for Irizarry's claim complies with due process. The motion to dismiss Irizarry's claim under Rule 12(b)(2) is therefore **denied**.

### D. *Bristol-Myers* Does Not Bar Non-Resident Class Members' Claims

Next, BB&T argues that the Supreme Court's recent decision in *Bristol-Myers* bars the Court from exercising personal jurisdiction over the claims of putative class members who are not residents of Florida. (ECF No. 15, at 13-17.) The Court disagrees.

*Bristol-Myers* involved a "mass action" brought in California state court by 678 individually named plaintiffs from 34 different states against a non-resident defendant. *Bristol-Myers Squibb, Co. v. Super. Ct. of Cal., San Francisco Cty.* 137 S. Ct. 1773, 1777-78 (2017) (noting that 86 of the plaintiffs were California residents). The Court faced the question of whether the Fourteenth Amendment's due process clause allows a state court to exercise personal

jurisdiction over named, non-resident plaintiffs' claims asserted against non-resident defendants, where no connection exists between those claims and the forum state. Applying "settled principles regarding specific jurisdiction," the Court held that the California court's exercise of personal jurisdiction over the non-resident plaintiffs' claims violated the due process clause of the Fourteenth Amendment. *Id.* at 1781-82. In so holding, the Court reaffirmed that "[w]hat is needed [for specific jurisdiction]—and what is missing here—is a connection between the forum and the specific claims at issue." *Id.* at 1781. Recognizing that the "decision concerns the due process limits on the exercise of specific jurisdiction of a *State*," the Court left "open the question whether the Fifth Amendment imposes the same restriction on the exercise of personal jurisdiction by a federal court." *Id.* at 1780, 1783-84 (emphasis added) (noting that "federalism interest[s]" may be "decisive" in a determining the propriety of a state court's exercise of personal jurisdiction). In dissent, Justice Sotomayor took care to explain that the Court did not confront whether that decision "would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id.* at 1789 n.4 (Sotomayor, J., dissenting).

In the wake of *Bristol-Myers*, a number of district courts have confronted that question and the results are mixed. BB&T cites cases extending *Bristol-Myers'* holding to class actions. *See, e.g., Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 864-65 (N.D. Ill. 2018) *class decertified on other grounds*, 2018 WL 3659349 (N.D. Ill. Aug. 2, 2018); *Maclin v. Reliable Reports of Tex., Inc.*, No. 1:17-cv-2612, 2018 WL 1468821 (N.D. Oh. Mar. 26, 2018); (ECF No. 15 at 15-17 (collecting cases).) Numerous other Courts hold the opposite. *See, e.g., Becker v. HBN Media, Inc.*, 314 F. Supp. 3d 1342 (S.D. Fla. 2018) (Altonaga, J.); *Tickling Keys, Inc. v. Transam. Fin. Advisors, Inc.*, 305 F. Supp. 3d 1342, 1350-51 (M.D. Fla. 2018); *Molock*, 297 F. Supp. 3d at 126-27 *interlocutory appeal certified in* 317 F. Supp. 3d 1, *5-*6 (D.D.C. 2018).

The Court is persuaded by the growing body of law amongst district courts in this Circuit holding that *Bristol-Myers* does not bar claims of non-resident members of a putative class from asserting claims in federal court under the TCPA. The analysis of Judge Dalton in *Tickling Keys, Inc. v. Transamerican Financial Advisors, Inc.* is instructive:

> Defendants argue that the Court lacks personal jurisdiction over [Defendants] regarding the putative class because "[t]he class definition includes 'all persons' who 'were sent telephone facsimile messages' and is therefore not limited to putative members who were sent faxes in Florida." . . . As support, Defendants[ ] chiefly

rely on *Bristol–Myers Squibb Company*. . . . Defendants' interpretation of *Bristol–Myers* is twice flawed.

    First, *Bristol–Myers* was not a class action; rather, it was a multi-plaintiff products liability action originally filed in California State court that named both resident and non-resident plaintiffs. The U.S. Supreme Court left open 'the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court.' Second, the holding of *Bristol–Myers* addressed mass tort actions. The applicability of *Bristol–Myers* in the class-action setting is still an open question. For purposes of personal jurisdiction, this distinction is meaningful. *See, e.g., Fitzhenry–Russell, et al. v. Dr. Pepper Snapple Grp., Inc.,* No. 17-cv-00564-NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017).

    'In a mass tort action, like the one in *Bristol–Myers*, each plaintiff is a real party in interest to the complaints, meaning that they were named as plaintiffs in the complaints.' *Id.* By contrast, in a putative class action, 'one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the "named plaintiffs" are the only plaintiffs actually named in the complaint.' *Id.* (citing Fed. R. Civ. P. 23). So the Court declines to extend *Bristol–Myers* to the class action context. *See, e.g., Fitzhenry–Russell*, 2017 WL 4224723, at *4 (declining to extend *Bristol–Myers* to a class action at the motion to dismiss stage); *In re Chinese–Manufactured Drywall Prods. Liability Litig.*, No. 09-2047, 2017 WL 5971622, at *12–13 (E.D. La. Nov. 30, 2017) (same). Hence the Motion [to Dismiss] is due to be denied on this ground.

305 F. Supp. 3d at 1350-51 (citations omitted); *Becker,* 314 F. Supp. 3d at 1344-45 (holding similarly in TCPA class action). The Court agrees with Judge Dalton, and **denies** BB&T's request to dismiss the claims of non-Florida resident class members.

### 3.    Irizarry States a Claim Under the TCPA

In a last-ditch attempt at dismissal, BB&T makes two arguments under Rule 12(b)(6). First, BB&T asserts that the Amended Complaint fails to allege certain facts sufficient to show entitlement to relief. (ECF No. 15 at pp. 18-19.) Second, BB&T argues that the Plaintiffs do not adequately allege vicarious liability. (*Id.* at pp. 19-21.) Both arguments are meritless, and the Court denies the requests to dismiss as follows.

### A. Standard of Review - Rule 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### B. The Amended Complaint Sufficiently Alleges a Claim for Relief Under the TCPA

BB&T argues that the Amended Complaint fails Rule 8's pleading requirement because it: (1) "fails to identify the telephone number that made the calls that form the basis for their claims"; (2) fails to "sufficiently ple[a]d the dates and times that they alleged telephone calls were received"; and (3) fails to "plead that they were located in Florida when they received the telephone calls

alleged in the Amended Complaint." (ECF No. 15 at p. 19.) BB&T claims this information is critical to their ability to respond to the Amended Complaint in light of the affidavits they submit claiming neither they nor their agent, Convergys, have any record of calling the Plaintiffs. (*Id.*) BB&T also appears to object to the Plaintiffs' refusal to comply with its informal discovery requests for this information. (*Id.*)[2]

Yet, BB&T cites no authority to support the heightened pleading standard they request here. Generally, a "litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him." *Phillips v. Hillcrest Medical Center,* 244 F.3d 790, 800 n.10 (10th Cir. 2001) (internal quotation omitted); *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (internal quotation omitted)). Thus, the Court rejects BB&T's argument that the Amended Complaint fails to state a claim under the TCPA.

Finally, BB&T argues that the Amended Complaint lacks factual allegations sufficient to establish that BB&T is liable for the acts of its agents. (ECF No. 15 at pp. 19-21.) The Amended Complaint alleges that the "Plaintiffs do not yet know the identity of Defendant's employees/agents that" participated in the offending calls, but "will move to amend to name the individuals as Defendants" upon so learning. (ECF No. 5 at ¶ 11.) Until that time, however, the Plaintiffs assert that all references to BB&T in the Amended Complaint encompass agents acting under the authority or approval of BB&T. (*Id.* at ¶ 12.)

BB&T summarizes these allegations as "an attempt to impose vicarious liability on BB&T for the acts of its agent." (ECF No. 15 at p. 20.) Base on that statement, BB&T cannot dispute that it has "fair notice of what the claim is and the grounds upon which it rests," thus satisfying Rule 8. *Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 974 (11th Cir. 2008). BB&T's motion to dismiss under Rule 12(b)(6) is therefore **denied.** The factual issues raised in the Motion related to identity of any third-party used by BB&T to solicit the Plaintiffs are appropriately addressed through discovery.

---

[2] Ironically, BB&T is requesting the Court to stay discovery pending adjudication of this motion. (*See* ECF No. 23.)

### 4. Conclusion

In sum, the Motion (ECF No. 15) is **granted in part and denied in part.** The claims of Plaintiffs Ralph Lee, Sharon Montmimy and Ben Newman are **dismissed without prejudice** for lack of personal jurisdiction over BB&T. The requests to dismiss Jeorge Irizarry's claim and the claims of non-Florida resident members of the putative class are **denied**. BB&T's motion to dismiss under Rule 12(b)(6) is **denied**. BB&T shall respond to the Amended Complaint within **14 days** from the date of this order.

The motion to stay discovery pending determination of this Motion or alternatively to enlarge the deadlines to respond to discovery requests, (ECF No. 23), is **granted in part**. The parties are ordered to respond to all pending discovery requests within **30 days** from the date of this order, or as otherwise agreed upon by the parties.

The motion to stay all remaining scheduling order deadlines, (ECF No. 26), is **denied.** The Court, however, orders the parties to meet and confer and submit a proposed amended scheduling order with **seven days** of the date of this order. The Court will consider a reasonable continuance of the April 1, 2019, trial setting, should either party request one.

**Done and ordered** at Miami, Florida on October 31, 2018.

Robert N. Scola, Jr.
United States District Judge